UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE MILTON LOPEZ AREVALO, (A208-150-269),<br>Petitioner,<br>v.<br>WARDEN, et. al.,<br>Respondents. | No. 1:26-cv-04853-DAD-CKD<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. The matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302.

## I. Factual and Procedural History

Petitioner, a 27-year-old citizen of El Salvador, entered the United States in March 2015, when he was 15 years old. ECF No. 7-1 at 3. He was released to the custody of his aunt after approximately 20 days in detention. ECF No. 1 at 2, 16. After obtaining the requisite state court findings, Petitioner filed a petition with U.S. Citizenship & Immigration Services (USCIS) for Special Immigrant Juvenile Status (SIJS). Id; ECF No. 7-1 at 3. On October 10, 2016, USCIS approved the SIJS petition and granted Petitioner deferred action, and on November 2, 2016, an immigration judge terminated removal proceedings. Id. On the basis of his SIJS visa, Petitioner submitted an application to adjust his status to that of a lawful permanent resident. Id. at 2.

USCIS denied that petition in 2022, indicating that Petitioner did not respond to a request for evidence. Id; ECF No. 7-1 at 3.

Petitioner's criminal history begins in 2018 with arrests for driving under the influence of alcohol, driving without a license, hit and run, and possession of a controlled substance and burglary tools, though it appears that these arrests did not result in convictions. ECF No. 7-3 at 6-8. In 2020, Petitioner was arrested and convicted for false imprisonment (Cal. Penal Code § 236), driving under the influence of alcohol (Penal § 23152(b)), and evading a peace officer (Penal § 2800.1(a). Id. at 9-12. In 2025, Petitioner was convicted under Cal. Penal Code § 245(a)(4) for assault with force likely to produce great bodily injury and § 487(c) for grand theft. Id. at 14, 17.

While Petitioner was serving a criminal sentence, the county jail referred him to U.S. Immigration and Customs Enforcement (ICE), who placed a detainer on him. ECF No. 7-1 at 2. When Petitioner was released from criminal custody on February 11, 2026, ICE took him into custody and re-initiated removal proceedings against him. ECF No. 7-1; 7-2.

Petitioner filed an application for writ of habeas corpus on June 24, 2026. ECF No. 1. He raises both substantive and procedural due process claims and alleges that his re-detention violates the Immigration and Nationality Act (INA). Id. Respondents assert that Petitioner is subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(A) because his conviction under Cal. Penal Code § 245(a)(4) constitutes a crime involving moral turpitude. ECF No. 7.

## II. Legal Standards

### A. Constitutional Framework

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). A writ of habeas corpus may be granted to a petitioner in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3).

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [non-citizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). The Due Process Clause "protects individuals against two types of government action: violations of substantive due

process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted).

**B. Statutory Immigration Framework**

The detention of a noncitizen pending removal proceedings is governed by 8 U.S.C § 1226. While § 1226(a) allows the Attorney General to either detain *or* release noncitizens while their removal proceedings are pending, § 1226(c) imposes *mandatory* detention on certain noncitizens. 8 U.S.C § 1226(c)(1) ("The Attorney General *shall* take into custody…) (emphasis added). See also 8 U.S.C § 1226(c)(4) (allowing release *only if* the Attorney General ("AG") deems it necessary for witness protection *and* if the AG determines such noncitizen witness will not pose a danger or flight risk). Subsection (c)(1)(A) requires detention without bond for any noncitizen who is inadmissible under § 1182(a)(2) for certain criminal convictions, including a crime involving moral turpitude. 8 U.S.C. § 1226(c)(1)(A); 8 U.S.C. § 1182(a)(2).

**III. Analysis**

**A. Detention Authority**

The undersigned turns first to Petitioner's third claim that his current detention violates the Immigration and Nationality Act (INA). Petitioner's argument assumed that ICE claimed to detain him under 8 U.S.C. § 1225(b). In their response, Respondents clarified that Petitioner is subject to detention pursuant to § 1226(c) due to his 2025 assault conviction under Cal. Penal Code § 245(a)(4).

While neither the Ninth Circuit nor the Board of Immigration Appeals ("BIA") has ruled specifically on whether Cal. Penal Code § 245(a)(4) is considered a crime involving moral turpitude, both have held that a conviction under a preceding subsection, Cal. Penal Code § 245(a)(1), is a crime involving moral turpitude. See Safaryan v. Barr, 975 F.3d 976 (9th Cir. 2020), giving Chevron deference to the BIA's determination in Matter of Wu, 27 I&N Dec. 8 (BIA 2017). The same analysis can be used to deem § 245(a)(4) a crime involving moral

turpitude. Safaryan and Wu utilized the categorical approach to determine that the elements of § 245(a)(1) fall within the generic federal definition of a crime involving moral turpitude. To identify the elements of § 245(a)(1), the courts consulted the California criminal pattern jury instructions. Safaryan, 975 F.3d 976 at 984. They then found that the statute's elements combine a sufficiently reprehensible actus reus - the use of a deadly weapon - with a sufficiently culpable mens rea – acting willfully with the knowledge that the action was likely to apply force to another person – and therefore constitute a crime involving moral turpitude. Id. at 987. Notably, the jury instructions for § 245(a)(1)-(4) and (b) are written together; they include the same *elements* of the crime and only list the use of force likely to produce great bodily injury (§ 245(a)(4)) versus a deadly weapon (§ 245(a)(1)) as alternative *means* of committing the same crime. See Judicial Council of California, Criminal Jury Instructions (CALCRIM) No. 875. The statute also imposes the same punishment for the use of force likely to produce great bodily injury (§ 245(a)(4)) as it does for the use of deadly weapon (§ 245(a)(1)). See Cal. Penal Code § § 245(a)(1), (b). This implies that the use force in § 245(a)(4) makes the crime's actus reus just as "reprehensible" as the use of a deadly weapon in § 245(a)(1). In other words, the courts' reasoning for finding that § 245(a)(1) constitutes a crime involving moral turpitude logically follows for § 245(a)(4). Therefore, the undersigned finds that Petitioner's conviction under Cal. Penal Code § 245(b) is correctly classified as a crime involving moral turpitude that § 1226(c) governs Petitioner's current detention.

**B. Substantive Due Process**

Petitioner's first claim is that his current detention violates his substantive due process rights, in that it is punitive and bears no reasonable relation to the legitimate government purpose of protecting the community or preventing flight. "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972). In the context of pretrial detention, the Ninth Circuit has held that "[a] [substantive] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its

regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 747 (1987)).

In support of his argument regarding the punitive nature of this detention, Petitioner alleges that he was detained to assist ICE in meeting detention quotas and pressure him into abandoning his application for lawful permanent residency. While the undersigned acknowledges the government's expanded use of § 1225(b) detention, the purported detention authority here is § 1226(c), triggered by a qualifying criminal conviction, not a pretextual justification. The detention also appears unrelated to any purpose of preventing Petitioner's adjustment of status, as his application was denied years before his current detention.

Petitioner argues that his current detention is unrelated to the government's purpose of effectuating removal because a grant of deferred action prevents removal. Petitioner states that USCIS granted him deferred action upon the approval of his Special Immigrant Juvenile Status petition in 2016. Nothing in the record indicates the duration of the deferred action grant or whether it is still in effect. The undersigned takes judicial notice of a March 7, 2022 USCIS policy alert that discusses a previous directive to defer removal "until USCIS makes a final determination on the pending victim-based immigration benefit application(s) or petition(s), including adjustment of status for noncitizens with approved Special Immigrant Juvenile Status." U.S. Dep't of Homeland Security, Citizenship & Immigration Services, PA-2022-10, Special Immigrant Juvenile Classification and Deferred Action (2022). The 2022 policy directs USCIS to grant deferred action for a period of four years. Id. at 2. Petitioner's period of deferred action would have therefore likely ended either when USCIS denied his application for lawful permanent resident status, or four years after the 2016 grant. Absent evidence that the grant of deferred action is still in effect, the undersigned does not find that the prior deferred action has any effect on the government's ability to remove Petitioner.

Petitioner also argues that his detention does not bear a reasonable relation to protecting the community or preventing flight because there has been no individualized determination that he poses any danger or risk of flight. Respondents maintain that Petitioner is subject to mandatory detention under 8 U.S.C. § 1226(c), which does not permit, let alone require,

individualized hearings to make such a determination. 8 U.S.C § 1226(c)(1) ("The Attorney General *shall* take into custody…) (emphasis added); see also 8 U.S.C § 1226(c)(4) (allowing release *only if* the Attorney General ("AG") deems it necessary for witness protection *and* if the AG determines such noncitizen witness will not pose a danger or flight risk); Demore v. Kim, 538 U.S. 510, 518-531 (2003). If Petitioner is indeed subject to § 1226(c)'s mandatory detention scheme, no such individualized finding is required.[1]

**C. Procedural Due Process**

Next, Petitioner claims that re-detention without notice, hearing, or changed circumstances violated his procedural due process rights.

Courts in this district have found due process violations where petitioners have been re-detained pursuant to § 1225(b) or § 1226(a) after a previous release or parole. See e.g. Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606 (E.D. Cal. Dec. 9, 2025) Selis Tinoco v. Noem, 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025); F.S.S.M. v. Wofford, No. 1:25-cv-01518-TLN-AC, 2025 WL 3526671 (E.D. Cal. Dec. 9, 2025). In those cases, the Court found that the petitioners acquired a strong liberty interest upon release, and detention without a hearing risked erroneous deprivation of liberty. In the context of § 1226(a) detention, courts in this district have granted habeas relief and ordered post-deprivation hearings where, as here, respondents have provided non-pretextual justifications for re-detention after release. See e.g. Calvillo v. Chestnut, No. 1:26-cv-00569-DC-CSK, 2026 WL 253627 (E.D. Cal. Jan. 31, 2026). Here, though, Petitioner is detained under § 1226(c), which, as discussed in section III.B., supra, does not require an individualized determination of danger or flight risk. Where courts in this district have found due process violations in § 1226(c) detention after prior release, they have done so when the government has known about the criminal convictions at time of prior detention and release, or has delayed the detention until many years after the

[1] As discussed in section III.C., Petitioner is entitled to a hearing to determine whether he is properly detained under § 1226(c). Should the immigration judge find that Petitioner's detention is instead governed by § 1226(a), then the appropriate relief would be a bond hearing to determine individualized risk.

criminal conviction. See Belisario v. Warden, No. 1:26-cv-04580-DJC-SCR, 2026 WL 2225662 (E.D. Cal. Aug. 3, 2026) (finding that detention after prior release violated due process because respondents were aware of qualifying crime at the time of release); Carballo v. Andrews, No. 1:25-cv-00978-KES-EPG, 2025 WL 2381464 (E.D. Cal. Aug. 15, 2025) (ordering a bond hearing for petitioner who had previously been detained then released after a qualifying criminal conviction); Faubricio M.M. v. Warden, No. 1:25-cv-01725-KES-EGC, 2026 WL 2333518 (E.D. Cal. Aug. 12, 2016) (relief granted where petitioner was detained more than six years after qualifying criminal offense). Here, the § 1226(c) detention was immediately preceded by Petitioner's conviction for a crime involving moral turpitude. See ECF No. 7-1.

While § 1226(c) detention does not allow for a bond hearing, some process may be required to determine whether detention under § 1226(c) is appropriate. The Board of Immigration Appeals (BIA) has found that noncitizens are entitled to notice of the circumstances that provide the basis for mandatory detention and an opportunity to challenge the detention before an immigration judge. In re Kotliar, 24 I. & N. Dec. 124, 127 (BIA 2007). This is a different process than a hearing pursuant to Matter of Joseph, 22 I. & N. Dec. 799 (BIA 1999). In a Joseph hearing, an immigration judge determines whether it is substantially unlikely that the charges of removability that subject the noncitizen to mandatory detention will be sustained. Kotliar, 24 I. & N. Dec. 124, 126 (citing Joseph, 22 I. & N. Dec. 799, 808). In the instant case, the factor that subjects Petitioner to mandatory detention – the conviction for a crime involving moral turpitude (8 U.S.C. § 1182(a)(2)(A)(i)(I)) – is not mentioned in the Notice to Appear. Petitioner is charged under 8 U.S.C. § 1182(a)(6)(A)(i) (present without admission or parole) but not § 1182(a)(2)(A)(i)(I). ECF No. 7-2. Where the record reflects that a noncitizen has committed any of the offenses covered in the relevant subsections enumerated in § 1226(c), the noncitizen is subject to mandatory detention without regard to whether the government has also lodged a removability charge based on the offense. Kotliar, 24 I. & N. Dec. 124, 126. The record in this case contains evidence that Petitioner committed a crime involving moral turpitude. See ECF No. 7-3 at 13-14, showing conviction under Cal. Penal Code § 245(a)(4). However, if the basis for detention is not included in the Notice to Appear, the noncitizen "must be given notice of the

circumstances or convictions that provide the basis for mandatory detention and an opportunity to challenge the detention before the Immigration Judge during the bond redetermination hearing." Id. The basis for Petitioner's detention was not included in the Notice to Appear, and, given that his habeas filings assumed he was being detained under § 1225(b) rather than § 1226(c), it appears he was not otherwise given notice of the basis of his detention. Nor has he been provided a hearing to challenge the detention. The lack of notice and opportunity for a hearing in this context violates Petitioner's procedural due process rights.

## IV. Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus be GRANTED on Count 2 (procedural due process);

2. Within seven (7) days of this court's order, Petitioner Jose Milton Lopez Arevalo (A 208-150-269) be provided the following:

   a. Formal notice of the circumstances which provide the basis of his detention; and

   b. A hearing before an immigration judge to determine whether such circumstances warrant detention pursuant to 8 U.S.C. § 1226(c).[2]

3. Should an immigration judge determine that Petitioner is not properly subject to § 1226(c) detention, Petitioner must, within seven (7) of any such determination, be provided a hearing in accordance with 8 U.S.C. § 1226(a) and its implementing regulations, at which Petitioner's eligibility for bond must be considered.

4. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven (7) days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened

[2] The undersigned acknowledges Petitioner's factual allegations regarding immigration judges' ability to render impartial adjudications under the current executive administration's policies, but finds the record evidence insufficient to determine that immigration judges are wholly unable to act as neutral adjudicators.

objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: 08/26/26

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3 lope4853.imm.fnr